James Thorson, counsel for Addie Thweatt, plaintiff appellant in this matter and we're here today to address the dispositive issue before the court and that is did the district court err when it ruled on the 12b6 and 12c pleadings in this case that there was qualified immunity for the defendants, finding that the defendants produced probable cause for the arrest of Thweatt and that the defendants were not the causation of it because the causation was broken by the issuance of the warrant by an independent magistrate. Can I ask you to respond perhaps more fully than you did in your reply brief to something that was in the response brief that I thought was kind of telling. So the response brief points out that in your request for oral argument you state this appeal concerns important legal questions that are not yet decided. How is that not a concession that the defendants are entitled to qualified immunity under prong two? Your Honor, it's not a concession at all. It's that important legal questions that are undecided is pretty close to saying it doesn't violate clearly established laws declared by this court or the Supreme Court. Well the defendants in this case want the court to say you have to find for the matter to be clearly established, you have to find that the exact circumstances dictate. No I agree you don't have to find the exact circumstances but the language of the Supreme Court has said that existing law, but it also says, so the reason I ask this is that in your reply brief you just say sort of the right not to have your First Amendment violate is clearly established or your right not to have the Fourth Amendment violate is clearly established. And the Supreme Court has said over and over and over again that is not how qualified immunity works. It has to be, I agree, the standard is not, but there's a case directly on point. Everybody agrees that's not the standard, but what the Supreme Court has said is existing authority has to put the issue beyond dispute so that any reasonable officer would know. And I don't know how if this appeal concerns important legal questions that are not yet decided how that standard can be satisfied. Well Your Honor, to the extent that the law is argued and set out in our brief, we think that the question is for this particular plaintiff who is a school bus driver confronting a disruptive student on a school bus, that question has not been precisely decided. Well I guess, let me put it this way then. What decision of the U.S. Supreme Court, of this Court, of the Supreme Court of Virginia for robust consensus of persuasive authority do you think is most directly analogous to this situation? Well the Supreme Court, the United States Supreme Court case judge in the New Jersey versus Teo case had to do with students and school teachers. Remind me what the facts of that case were. That's not a fake question. I'm actually genuinely asking you to remind me what the facts of that case were. Yes Judge, just a moment. Judge, we clear, we set out in our brief the precedent for courts finding regarding matters of schools. Can I ask you maybe a different question that I also had from this, based on your brief? You argue, this is page 20 of your brief, you say that the video of the incident failed to show, you said your client's name is pronounced Tweet, is that correct? Tweet, yes. You say the video failed to show Tweet's mens rea was to cause public inconvenience or annoyance or alarm. I guess, could you just elaborate a little more, how could a video show or not show mens rea? I understand how it could show acus reas, but it's not immediately obvious to me how a video could show or disprove mens rea. Well you could argue the video can't read a person's mind, but you can tell from the But if you look at the video, it doesn't show Mrs. Tweet or Addie Tweet disorderly conduct violating the statute of Virginia. Let me ask you this, I did look at the video several times, and I did see her leaning over into the seat, pressing her head toward the student and saying, bring it on. And of course, up to that point, the student had never spoken to the bus driver. The student was speaking to a friend and said, I'm going to hit her straight in the face when she's getting on the bus. And she gets on the bus, and the bus driver gets up and says, you talking about me? You talking about me? And the student never answered. And then the bus driver leans over into the seat and says, bring it on. Tell me what you think bring it on means. Answer my question. No, I asked you a question. What does bring it on, what does that mean? That's what Tweet is saying. I'm asking you what you think that means. If you don't have an opinion, you can say so. I do have an opinion, Judge. And I'm looking at the video transcribed here. First off, when the student is walking onto the bus. Could you answer my question? What does the term bring it on generally mean? It means hit me, doesn't it? I don't think in this context it necessarily means hit me. The bus driver heard the student say, getting on the bus, I'm going to hit her, and the student is speaking to a fellow student, I'm going to hit her directly in the face. And so, she never says that to the bus driver. The bus driver interprets that statement, her being the bus driver is the object, so the bus driver comes over, leans over the seat and says, bring it on. Now tell me what you think bring it on means. Bring it on means answer my question in this context, because she says, she's asking the student. You don't think bring it on means take your first shot? You're going to hit me directly in the face, take your first shot. You don't think that's what that means? Judge, it could mean that. There could be a broad spectrum of things. But I don't think that the bring it on statement by tweet to the student was to say, let's get in a fight. And the student... I don't know. I would think that's the invitation for a fight myself. That's my reading of it. And I saw her actions. She's leaning right over into that bus chair. And the student is basically refusing to answer. And then the teacher says, I'm going to call 9-1-1. And of course, student says, I want to... Well, right after my recording, my understanding of the video was that after she says, bring it on, you're going to hit me in the face. And the student says at 28, 28, excuse me, 28, 29 seconds into the video. Yes, ma'am, that's you. She admitted... She ultimately admitted that when she got on the bus, when she was getting on the bus, that's what she was intending to get the message across to tweet. She was speaking loud enough so that tweet would understand that she wanted to hit tweet in the face, straight in the face. Different difficulty strikes me that your client has here. So we have a warrant in this case, which normally would break any causal chain. Does the complaint make any allegation of Rhodes telling Jones to say any particular thing to the magistrate judge? When I looked at the complaint, I didn't see any allegation. So once there's a warrant, you basically have to show there's something wrong with the process of getting the warrant. And obviously, if someone told someone to lie to a magistrate judge, that would be a bad thing. But does your complaint actually say Rhodes told Jones to say X to the magistrate judge? Is there anything in the complaint about that? Well, I think you can refer paragraph 29 says, Officer Jones at the direction of Rhodes instituted the criminal proceedings. And you look at the letter. Well, at the direction, sure. But at the direction of is go get a warrant, right? Yeah. Not telling me what I should say to the magistrate. Well, if you look at the letter of May 10th that Rhodes gave tweet on joint appendix page 15, the letter says, I told you that this would not change the fact that Officer Jones was going to press charges against you for disorderly conduct. Now, how does Rhodes know that the day before it happens? The officer told them? I mean, there's things like a number of ways. I thought they looked at the film tape. We don't know that Jones looked at the tape. There's no evidence. I have no evidence of that. But the question is, if you have no evidence of that, how do you know that the magistrate judge didn't have probable cause? The only argument you could make is a Frank's argument. Or you could make an argument that the evidence presented to the magistrate was insufficient. But you have neither. We've made those arguments, Judge. The evidence is sufficient. Where's the evidence of that? There's no evidence that Jones had any viewing of the tape. It seems like it's based on Rhodes telling Jones, go get a warrant against tweet. So what do you say Jones told the magistrate judge? We don't know. Have no idea. It's unrecorded. The magistrate judge exercised judicial discretion to issue a warrant. On false information, misleading information. Well, that's my point. Why is it false? Because if you look at the video, there's no disorderly conduct by tweet. And also, if you look at the warrant, Your Honor, there's no listing. What's the definition of misconduct? I thought offer to do violence is disorderly conduct. What's the statutory language? If it has a direct tendency to cause violence, that's part of the statute. And also, Judge, Virginia Code section 22.1-279.1A gives tweet, who's a bus driver, a school employee, a due deference to her actions to protect herself, to protect others. And that is a big elephant in this room. The defense never even responded to that in the opening brief of the plaintiff. So if the court looks at 22.1-279.1A. You brought an action against two people for malicious prosecution. Right. And the prosecution was authorized by a judicial officer. Right? Ultimately. What do you mean ultimately? Yes. Actually. By a warrant. Yes. But it was instigated. It was caused by Rhodes and the officer. But that's the way it always happens. People go down to the magistrate. The magistrate either issues a warrant or doesn't issue a warrant. And that's probable cause. Then after that, it may go to trial and the person may be acquitted. But it doesn't remove the probable cause. Of course. I understand that, Your Honor. Totally. But in this case, where is the probable cause? There's no probable cause. Looking at that video. Well, how do we know? You don't know what the officer was told, do you? No. And at the pleading stage, how can we... We haven't done any discovery. Well, how do you have a cause of action if you don't? Because there's got to be... Yeah. Because we know that the girl caught on the bus... I can tell you that the video would justify a claim that the statute was violated, I think. In my judgment, looking at the video, it looks to me like the bus driver offered to get into a fight with the student. Bring it on. Hit me, basically. Let's get this over with. Well, this... But she didn't, Judge. And she said, I'm going to call somebody to get you off the bus. Well... The girl gets up and says, F you, I'm leaving the bus, and F you, bitch, to everybody when she leaves. And the girl got on the bus with the intent to cause the disruption. Wasn't tweet as the bus driver. It was the student caused the disruption. The student didn't even talk to the bus driver. The student got on the bus... The student was talking to the bus driver when she got on by saying, I'm going to hit you in the face. That's what the student was talking... I'm going to hit her, her. Okay, that's... And they're talking to the student, and the student gets on and sits down. If I said... And the bus driver gets up and said, you talking about me? Yeah. Well, the bus driver wasn't naive. The bus driver understood the student was cloaking her talk about, I'm going to hit you straight in the face with their friends. How could she not understand the tweet would hear that? It'd be like me saying something to defense counsel over here about the court. And I could say, well, I'm not talking to the court. I'm talking about the court. Judge, it's clear that this was a disorderly conduct on the student, not tweet. And again, the Virginia Code section 22.1-279.1A gives tweet the deference to control disruptive students and control students that would cause threats or harm to other students or to herself. And that's what she did. And this warrant should never have been issued for disorderly conduct. It's highly, highly unusual that this happened. And I'm CMO for my time, Your Honor. Okay. Thank you, Mr. Thorsen. Mr. Sparks. Morning, Your Honors. May it please the court. Randy Sparks from Kauffman & Knolls on behalf of Officer Jones in this case. Your Honors, we're here. And I think that in your questioning with Mr. Thorsen, you've hit the very main issues. I won't belabor these points. But I think the short answer in all of this is that the district court did exactly what it was supposed to do in these circumstances. Based with a qualified immunity argument, it took that issue up at the earliest time it could so that the government officials wouldn't have to go through the trial. He reviewed the video that was referenced repeatedly throughout the complaint and came to the conclusion that there was probable cause. I mean, literally, the district court found probable cause. You know, you read this record and you step back from this case and you say, the bus driver overreacted, got involved in something, a student's conversation with in pursuing criminal prosecution. Why didn't they just discipline her, counsel her, and warn her? And it seemed to me when the court threw it out throughout the case, it was probably justified as a reaction by both parties. And you wonder now we're here on a collateral proceeding saying that whose overreaction was the worst? I mean, the district court throws it out for qualified immunity saying this is... We certainly understand your honors. I'm just focusing on judgment calls here. Yeah, absolutely. And that's exactly, your honor, I think your point is very well taken in that that's exactly what qualified immunity is about. It's about those judgment calls and that as a government official, and particularly a to the carpet every time you make a judgment call that maybe was not the perfect one under the circumstances. What we have here is we have a police officer that was handed over this situation and went to a magistrate judge, got a warrant. The short answer, your honor, in all of this is I do believe that what we're looking for, at least at this point, even on qualified immunity, we're not even looking at did he have probable cause. It's that objective reasonableness standard. But the district court went forward. They looked at the video and said, based upon the circumstances, and I think your honor's right, we have a student that got onto a bus running her mouth to her friend. I think that the video shows that the student gets on saying, I will punch her in her face. The friend that she's talking to says, no, you won't. Student sits down, is very quiet in the seat. At that point, that's when Ms. Tweed unbuckles, gets out of her seat, goes over to the student, and that's when the confrontation starts. Your honor, I can answer your question. You guys thought that's criminal conduct and wanted to convict her of a crime. Why wasn't she just disciplined? Your honor, I think that they, I think ultimately, and I'll allow Ms. York to discuss that since I'm the officer. The officer, was the officer a school employee? The officer is a police department employee assigned to work at the school. So your honor, I think that what you have is you've got a situation where Ms. Tweed gets up and your honor, when you ask the question, what does bring it on mean? I think your honor's interpretation is exactly the interpretation because she is asking her, who are you going to hit in the face? Who are you going to hit in the face? You talking about me? You going to hit me in the face? Bring it on. I think that was exactly what it was. It was an invitation to fight. It was the mannerism of her leaning over. It was blocking that seat. And I think that as a police officer viewing that video, when you have an adult school official that is dealing with a minor child, the tendency is probably to protect the minor child in that circumstance. And I think that that's what they did. But I think Judge Niemeyer, his point is, I think is well taken in with regard to what's actually occurred here. You've got these bus drivers, there's obviously, there's a history between this student and the bus driver. These bus drivers have students of all types on there. Some of them very unruly. They get on the bus and they have to deal with a lot of this stuff. She overreacted on this occasion. And then it goes to this Rhodes. And then Rhodes decides that we're going to, we're going to, we're going to go ahead and take care of this little problem with a, with a hammer. And, and that's, and then Rhodes overreacts. And then it gets to this, I think the court, I think, I think the district court did the right thing here. But, but this is what happens when, when the wrong people are running the show. All right. I think that looking back on this, that we could all sit here and say, how would we have handled this situation? And maybe we would have all handled it differently. But I, I think Your Honor, you are correct when you say that you think the district court did the right thing because the, the, when we're talking about these 1983 malicious prosecution and we're talking about qualified immunity, we're not here to second guess and say, would we have done it the same thing? We're here to say, did they object? Did they act reasonably under the circumstances? Did they have some sort of probable cause? And I think in these circumstances, Judge Hudson very clearly found from looking at the video, there was probable cause to believe that disorderly conduct occurred. And the fact that both he and the Magistrate Judge found it, stops the causation. Let me ask this question. Did the district court say it was not going to reach an issue of putility established law because there was no constitutional violation and yet still found qualified immunity? The, the, he did because to get the qualified immunity, it's got to be both. That there was a constitutional violation and if there was the violation, that, that's how you overcome the qualified immunity. That there's a constitutional violation that was clearly established. Since he found no constitutional violation, he didn't need to get to the second point. But I think that Judge Hayden's question, and I won't belabor that point because we raised it in our brief, but we believe that Ms. Thweatt, through her briefing, has absolutely admitted that, that there can't be that clearly established constitutional right when you turn around and you say, this is an open question that the courts have never decided. So I think if Judge Hudson had reached that issue, and, and we argued in our briefs below to the district court that it was not a clearly established constitutional right. I don't believe that the district court needed to get that far under the analysis they did. The analysis was no constitutional violation. The warrant, the warrant operates to break the causal chain, taking both of those. We don't have a claim here and properly dismiss this claim. Based on that, we would ask this court to affirm the district court's decision. We think it is the correct decision and that it's in accordance with law. Thank you, Mr. Sparks. Ms. York? May it please the court, Melissa York on behalf of Ronald Rhodes. Your Honor, my client is situated a little bit differently because he did not go to the magistrate to swear out the warrant. The complaint only alleges three facts about my client, and that is that he met with Ms. Thweatt on May the 10th, that he gave her the letter that's attached as exhibit one to the complaint, which is that joint appendix 15, and that he informed her that she'd be placed on administrative leave without pay pending the court proceedings because Officer Jones was going to press charges. Then at paragraph 29 of the complaint, you get a conclusory allegation that Officer Jones at the direction of Ron Rhodes proceeded to the magistrate to swear out a warrant. And there are no facts as to what Mr. Rhodes told Officer Jones, whether he directed him, as to what to say to the magistrate, or even that they spoke at all. A conversation can be inferred from the complaint, but the facts of that conversation cannot. And plaintiff in her opening brief at page two, footnote one, concedes that she has no facts to support that conclusory allegation that Rhodes directed Officer Jones to seek the warrant. And so for that reason, Ron Rhodes could not have caused Ms. Thweatt's arrest because you intervening superseding decision makers in Officer Jones and the magistrate. And for that reason, there is no constitutional violation alleged against my client, and he was entitled to qualified immunity. We also, Your Honors, agree that there was probable cause if you view the video, which Judge Hudson did. He had all the evidence that Ms. Thweatt argues should have been presented to the magistrate and made the conclusion that there was probable cause for the arrest. Qualified immunity protects those who sometimes have to make bad guesses in gray areas. And while things could have been done differently, perhaps maybe discipline was appropriate instead of criminal charges. We're not here to second guess those decisions. We're here today to determine whether there was... What do you understand to be the constitutional violation that's been alleged? My understanding is that Ms. Thweatt is alleging a Fourth Amendment violation, an unreasonable seizure based upon her arrest for disorderly conduct. And that requires that the defendant caused the seizure without probable cause and that the seizure terminated in her favor. Obviously, she was acquitted in Juvenile and Domestic Relations District Court, so the proceedings did terminate in her favor. But because there was probable cause for the arrest and because my client did not cause the arrest, there is no constitutional violation alleged. All right. Thank you very much. Thank you.  Mr. Thorson? Yes, Your Honor. Your Honor, again, I want to point to the Virginia Code Section 22.1-279.1 to talk about whether or not this is disorderly conduct on the basis of Ms. Thweatt. That statute covers school employees and it says that the use of incidental, minor, or or their actions designed to maintain order and control are to be given due deference to reasonable judgments at the time of the event when they were made, including teachers, principals, or other persons employed by the school. That's Thweatt. It also covers actions designed to maintain order and control. That's what Thweatt was trying to do. I guess I'm trying to understand how that relates to the constitutional violation. Like, that's probably a good argument that your client was properly found not guilty of violating the statute. But it can't be that every time an officer arrests someone for something that ultimately results in an acquittal, not only was that wrong, that was so wrong that it was a Fourth Amendment violation to arrest them in the first place. You're saying the magistrate got it wrong. The magistrate didn't apply the law correctly, right? But that's, the magistrate did look at everything and the magistrate's swing. We don't, Your Honor, we don't know what the magistrate looked at. I have no evidence that the magistrate saw the video. The video was even presented to him. Don't we presume that a warrant issued by a magistrate judge in the course of his order, unless you have something else to point out, that it's presumed that is a proper warrant? Well, in this case, Judge, if the magistrate did look at the video, he shouldn't have issued the warrant. I know, but we don't review that. We don't review that. We're reviewing the persons who instigated that. And the question is, why doesn't the magistrate's warrant insulate their liability? The arrest was made pursuant to, or seizure was made pursuant to a warrant. That's what the Constitution authorizes. Yeah, based on the oral testimony of Jones. Oral testimony. So what? And the warrant didn't even identify the student in the video. Do you know it was wrong? The oral testimony, he could have repeated exactly what the tape said, or he could have repeated exactly what's in the letter, or both. I don't know, Judge, we'd have to... We don't know, but you've got the burden to prove that. Right. You've got the burden to say that there was a warrant for the seizure. You've got to demonstrate that that violated the Constitution. And you say I don't have any evidence. We've made a plausible case to get past the pleading stage, Judge. We've made that plausible case. I don't understand how you say the magistrate judge acted improperly. He acted on false, misleading, or incomplete information provided by Jones. Can I just reassert, where in the complaint does it allege that?  Where does it allege the magistrate acted on inaccurate information, or that someone left information out? Basically, Judge Niemeyer said earlier, basically a Frank's argument. Where is the argument in the complaint that says the magistrate judge was lied to, or given false information, or anything like that? I believe we made that statement in the complaint. At paragraph 37, Rhodes and Jones acted recklessly and actual malice and with the conscientious regard for our rights in pursuing the criminal charges. We said that the bus film, as summarized in the letter on its face, was so lacking in an issue of probable cause to support the charge of disorderly conduct as to render official belief in existence by the magistrate judge unreasonable. We believe we've argued that. All right, anything else? No, Your Honor. Thank you very much for your time. Thank you.
judges: Paul V. Niemeyer, Toby J. Heytens, Max O. Cogburn Jr.